**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gerry E. GRIFFITH, Jr., Defendant–Appellant.**

No. 05–3640.

United States Court of Appeals,
Sixth Circuit.

Aug. 24, 2006.

PER CURIAM.

Gerry Griffith, Jr. pleaded guilty to possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), which firearm was discovered in the course of a search of Griffith's house after Griffith was arrested under controverted circumstances. Before entering his guilty plea Griffith had moved to suppress the gun, but the district court denied the motion to suppress on the basis that certain antecedent facts gave police officers probable cause to arrest Griffith. As part of his plea agreement, Griffith reserved the right to appeal the denial of this motion. We reverse that legal conclusion, and remand for further proceedings consistent with this opinion on the suppression motion and on issues that were raised here, but not decided.

### I

The arrest that Griffith challenges was on suspicion of a crime unrelated to the instant firearm charge—attempted abduction. On April 2, 2004, Griffith, a resident of Dayton, Ohio, was driving in Cleveland. On that date, a Cleveland school security officer named Wilcox saw Griffith speak from his car to a female pedestrian whom Wilcox perceived to be about nine years old (in fact, she was 18). Wilcox later stated that the girl was carrying an umbrella, and that when Griffith spoke to her she pointed it at Griffith and used it to "try to avoid" him. Griffith eventually drove away without ever leaving his car. Immediately after this interaction, Wilcox spoke to the girl, who he later reported told him that Griffith had "tried to get her inside of his car." On noting that Griffith had pulled into a nearby gas station, Wilcox also spoke to defendant, who main-

Before: BOGGS, Chief Judge; BATCHELDER, Circuit Judge; and BELL, District Judge.*

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

tained that he had been asking the "lady" for directions.

Wilcox did not immediately report the incident to the police. Later on April 2, however, a 14–year–old girl was abducted from a relatively nearby part of Cleveland. On April 8, with the abducted girl still missing,[1] Wilcox reported Griffith's interaction with the girl with the umbrella to the Cleveland police. Based on this report, officers obtained a "warrant" authorizing Griffith's arrest; this document was in fact issued by a prosecutor, not by a neutral and detached magistrate. That evening, officers from the Cleveland and Dayton police departments as well as the federal Bureau of Alcohol, Tobacco, and Firearms lured Griffith back to his house by calling him at his place of work in Dayton and falsely telling him his home had been burglarized.

Once Griffith returned home, he was arrested, handcuffed, and put into the back of a police car. Approximately half an hour after his arrest, while still sitting in the squad car (but after his handcuffs had been removed), Griffith signed a consent form for a search of his house. The ensuing search turned up no evidence of an abduction, but did uncover a gun and drugs. When the police subsequently discovered that the "girl" Griffith was suspected of attempting to abduct was actually 18 years old, the abduction charges were dropped.

After Griffith was indicted on the firearm charge, he moved to suppress the evidence uncovered in the search of his house—i.e., the gun and drugs found there—on the grounds that his consent was illusory or tainted by the circumstances of an unlawful arrest. He also objected that the search conducted by the

police exceeded the scope of his consent, and that the incriminating evidence would not have been found absent the excessive search. The district court found the arrest to be lawful as based on probable cause, and thus did not reach the issues of the validity of the purported warrant or the effectiveness of Griffith's consent to sustain the fact or extent of the search.

On appeal, Griffith argues that the firearm should have been suppressed because his consent to the search in which it was located was the fruit of an illegal arrest. We consider first whether police had probable cause to make the arrest, as the district court held, and answering that question in the negative we proceed to consider whether Griffith's consent was the fruit of the arrest.

## II

In examining a district court's determination of probable cause, we review the court's findings of fact for clear error, and its conclusion that probable cause existed de novo. *United States v. Hudson*, 405 F.3d 425, 431 (6th Cir.2005). "This court will find the district court's decision to be clearly erroneous when, although there is evidence to support the finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Worley*, 193 F.3d 380, 384 (6th Cir.1999).

■ The resolution of this aspect of the appeal requires us to consider the quantum of evidence that the district court viewed as constituting probable cause to believe that Griffith had committed the crime of attempted abduction, a crime that

---

1. This girl, Georgina DeJesus, was still missing as of July 28, 2006. *See* http://www.fbi. gov/ wanted/kidnap/dejesus.htm.

under Ohio law requires the use of "force or threats". Ohio Rev. Code § 2905.02(A). In determining whether probable cause existed to support a warrantless arrest (or to support an arrest independently of a warrant), a court must inquire whether "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Davis,* 430 F.3d 345, 352 (6th Cir.2005) (quoting *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Although probable cause does not require proof of each element of an offense, it does require a belief that the arrestee "probably" committed the offense, *Thacker v. City of Columbus,* 328 F.3d 244, 256 (6th Cir.2003)—which obviously entails the presence of each offense element. *See BeVier v. Hucal,* 806 F.2d 123, 126–27 (7th Cir.1986) (no probable cause existed when the offense required knowing or willful conduct, and arresting officer had no knowledge as to knowingness or willfulness and took no action to obtain such information from readily-available sources).

We hold that the information the police had, even taking Wilcox's hearsay statements at face value (as the police were entitled to do in light of his status and the statements' inherent plausibility), did not present evidence of the use of force or threats that would warrant a man of reasonable caution in believing that a crime had been committed. Neither Wilcox's own observation nor his relation of the girl's statements indicated that any physical interaction had taken place between Griffith and the girl, or that any such interaction had even been possible. At most, Wilcox's statement could sustain a belief that a conversation had taken place between the two, and that Griffith had in

some way solicited (or been perceived to solicit) further social or even sexual interaction.

Wilcox's statement, however, offers scant support for a belief that Griffith had used force or threats. The only phrases that could even conceivably be interpreted as meeting this statutory element of attempted abduction were that the girl "tried to avoid him" with her umbrella, and stated that Griffith had "tried to get her inside of his car." In light of the clear evidence that any 'avoiding' or attempts to get the girl into the car were not physical (because Griffith never got out of the car), Wilcox's statement cannot reasonably be interpreted to imply that threats were being made, as opposed to the much stronger implication that the girl simply indicated her lack of interest in Griffith by cutting off visual contact with him through an interposition of her umbrella. In light of the absence of any other corroborating or incriminating information, a very strained interpretation of this hearsay language cannot support the existence of probable cause.

Because the district court found that probable cause existed for Griffith's arrest, there is no ruling before us on the contested issue of the existence and validity of the warrant for Griffith's arrest. Although we hold here on de novo review that no probable cause existed, if faced with an actual warrant we would review the underlying probable-cause determination with deference. *See Illinois v. Gates,* 462 U.S. 213, 237, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Thus, on remand the district court is free to revisit the issue of the legality of Griffith's arrest in light of the government's claim that the arrest was pursuant to a warrant.

### III

Arguing that his arrest was illegal, however, does not immediately entitle Griffith

to suppression of the gun and drugs, because they were found in a search conducted pursuant to his consent. In order to be entitled to suppression,[2] he must also demonstrate that the search, although consensual, was nonetheless the 'fruit' of the allegedly-illegal arrest within the meaning of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *United States v. Lopez–Arias,* 344 F.3d 623, 629 (6th Cir.2003), stated the relevant rule:

> [F]ollowing Supreme Court precedent, we have repeatedly held that if a consent to search is given after an illegal seizure, evidence obtained pursuant to the consent to search must be suppressed, unless the consent is sufficiently attenuated from the illegal seizure such that the consent is the product of an intervening act of free will. In other words, not only must the consent be valid, *i.e.* voluntary, ... but the causal chain between the illegal seizure and the consent must be broken to avoid the consequences of the exclusionary rule.

While *Lopez–Arias* lists several factors that are relevant to this determination, such as the length of time between the illegal conduct and the consent, any intervening circumstances, the "purpose and flagrancy" of the illegality, and whether the arrestee was Mirandized, *id.* at 630, it also analogizes consents to search to confessions. In that context, it cites *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) which held that for confessions, *Wong Sun* determinations must be made "on the facts of each case," and not by "a talismanic test." Thus, we look to the totality of the circumstances surrounding a consent to search to determine whether it was the fruit of his arrest. In *Lopez–Arias,* the defendant's

vehicle was pulled over by four police cars, and he was arrested without probable cause and at gunpoint and placed in the back of a police car. 20 minutes later, he gave consent for a search, which this court later held to be the fruit of the unlawful detention.

█ We hold that Griffith's consent to the search of his home was the fruit of his arrest. Griffith was lured home on the false pretense that his house had been burglarized, where he was arrested without probable cause, handcuffed, and placed in the back seat of a police cruiser. His consent came no more than half an hour after his arrest, while he was still in the back of the cruiser. Under these conditions, Griffith's consent was the immediate result of his arrest, and there were no intervening circumstances that would break that chain of causation. Thus, if his arrest is ultimately judged to be illegal, Griffith will be entitled to have the results of the ensuing searches suppressed.

## IV

On appeal, Griffith also argues that the gun and drugs were found only as a result of the police exceeding the scope of his consent to search. Specifically, he maintains that he only consented to a search for the abducted girl or her body, whereas the government maintains that he consented to a search for any evidence pertaining to the abduction. Since the gun and drugs were found in a plastic bag that could not possibly have contained a young girl, Griffith claims that he had not authorized the police to look into the place where the contraband was concealed. Since we reverse the district court's order on other grounds, we need not reach this issue.

---

**2.** Of course, if the evidence at issue here is ultimately to be suppressed, Griffith will also have to prevail on the other possible grounds for the legality of his arrest, which we have not dealt with here.

## V

We therefore reverse the district court's denial of the suppression motion on the stated grounds, and remand for further proceedings consistent with this opinion.